Matter of Brittni P. v Michael P. (2022 NY Slip Op 06667)

Matter of Brittni P. v Michael P.

2022 NY Slip Op 06667

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

533757
[*1]In the Matter of Brittni P., Appellant,
v
Michael P., Respondent.

Calendar Date:October 18, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Michelle I. Rosien, Philmont, for appellant.
Sandra M. Colatosti, Albany, for respondent.
Pamela J. Joern, East Chatham, attorney for the child.

Ceresia, J.
Appeal from an order of the Family Court of Greene County (Terry J. Wilhelm, J.), entered July 13, 2021, which, among other things, dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a son (born in 2014). Pursuant to a January 2017 order, the parties were awarded joint legal custody of the child, with primary physical custody to the father and parenting time to the mother as the parties could mutually agree. As relevant here, the order provided that the parties must refrain from being under the influence of alcohol or drugs in the presence of the child. In February 2021, the mother filed an amended petition for modification of the custody order, alleging a change in circumstances and seeking primary physical custody of the child. The father then filed a petition to enforce the order. Following a fact-finding hearing held in June 2021, Family Court dismissed the mother's amended petition, concluding that while she had demonstrated a change in circumstances, she failed to establish that the proposed custody modification would be in the best interests of the child. The court also dismissed the father's petition as moot. This appeal by the mother ensued.
As there is no dispute that a change in circumstances has occurred since entry of the January 2017 order — namely, that the mother has achieved stable housing and employment, completed mental health treatment and maintained a valid driver's license — the issue before us is whether the best interests of the child would be served by a modification of the custody and visitation arrangement (see Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1018 [3d Dept 2022]). "In making a best interests determination, Family Court must consider such factors as the quality of the parents' respective home environments, the need for stability in the [child's life], each parent's willingness to promote a positive relationship between the child[] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[]'s intellectual and emotional development and overall well-being" (Matter of Jessica HH. v Sean HH., 196 AD3d 750, 753 [3d Dept 2021] [internal quotation marks and citations omitted]).
At the hearing, the mother testified that she works full time as a retail manager and lives in a three-bedroom apartment with her boyfriend of two years, where the subject child and the mother's other child each have their own bedroom. It was the mother's testimony that she did not appear in court when the January 2017 order was issued because she had lost her job and car and had suffered a mental breakdown, but since that time she had participated in nine weeks of inpatient treatment and over a year and a half of outpatient treatment, and had been successfully discharged. The mother testified that [*2]her modification petition had been prompted by worries over the child appearing anxious, angry and dirty, and smelling of cigarettes, when she picked him up for her weekend visits. She was also concerned about the unkempt condition of the father's residence and his constant drinking. The mother submitted into evidence photographs depicting the father's apartment in total disarray. As for the father's drinking, the mother testified that each time she picked up or dropped off the child at the father's apartment, the father either smelled like alcohol or was drinking a beer. She had also observed the father in the child's presence with signs of impairment including "glossy eyes" and sitting on the couch without "mov[ing] really that much." The mother further mentioned an occasion when the father asked her to drive him to a gas station to buy beer.
The father, in turn, testified that he is an assistant manager of a grocery store, that he lives in an apartment where he has been for four years, and that he shares the apartment with the subject child and another child, an infant son of whom he has sole legal and physical custody. The father denied that he is an alcoholic and stated that he does not drink in the presence of his children, but will occasionally have a beer or two on the weekend. The father's aunt also testified, indicating that she sees the child every day that he is with the father and that the father properly cares for the child. Regarding the issue of drinking, she stated that the father likes beer and has "maybe one beer a night, maybe two."
Apart from the hearing testimony, Family Court also considered a court-ordered investigative report completed pursuant to Family Ct Act § 1034 by two Child Protective Services caseworkers. The report indicated that there were concerns with the father's history of alcohol abuse, reciting that the father had been arrested three times within the previous five years, twice for alcohol-related driving offenses, in 2015 and 2019, and once, during a traffic stop in 2018, for unlawfully possessing marihuana. According to the report, the child stated that his father "loves to drink beer" and drinks "the tall ones . . . all day long." The child also said that the father has friends over to play video games, and they all drink beer together. Although the report mentioned that there were no safety issues in either the father's or the mother's home, it nevertheless noted a concern that the father's paramour, the mother of his other child, was not staying away from the father's apartment despite having been directed to do so, and that the subject child was fearful of the paramour as he had seen her stab the father in the neck with scissors.
In addition, Family Court considered a DWI screening and assessment of the father that was conducted in June 2020, in response to his 2015 arrest.[FN1] While the assessment report indicated that the father did not seem to have a substance abuse problem, it was apparent that [*3]the evaluator did not have all of the relevant information, as the report made no mention of the father's 2018 and 2019 arrests, and the only collateral contact listed therein was the father's aunt. In light of the incomplete nature of the report, the court had ordered the father to obtain another alcohol/substance abuse assessment by an accredited substance abuse agency, this time taking into account his full criminal history as well as information from other collateral contacts, including the mother. However, the second assessment never occurred because, according to the father's hearing testimony, he was told that it was too close in time to the first assessment.
The attorney for the child, in his written summation submitted following the hearing, expressed trepidation about the father's alcohol abuse. The attorney for the child stated that he was not opposed to primary physical custody being awarded to the mother and further requested, at a minimum, that the mother be granted primary physical custody pending the father's completion of an updated alcohol/substance abuse assessment.
Family Court ultimately ruled that the child's best interests would be served by continuing primary physical custody with the father, finding that the current arrangement was "working" for the child and that, "[n]o doubt[,] he has formed friendships and associations with other students." The court noted that "[t]he child's 'center of gravity' is residing with his father" and attending school in the father's school district.
We conclude that Family Court's best interests determination lacks a sound and substantial basis in the record (see Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [3d Dept 2020]; contra Matter of Andrea II. v Joseph HH., 203 AD3d 1356, 1359 [3d Dept 2022]). The court appeared to base its decision primarily on the notion that the child's "center of gravity" was living with the father in the father's school district. However, we are troubled by the lack of consideration given by the court to the father's drinking habits, and for this reason we must intervene. The court acknowledged that the father gave inconsistent testimony on this topic and, in fact, noted that the father appeared to be in violation of the provision of the custody order prohibiting him from being under the influence of alcohol around the child, but then went on to summarily find that these issues have had no negative impact on the child. In so concluding, the court did not have before it an adequate alcohol assessment, which would have provided a more complete picture of the father's potential for alcohol abuse. Further, the attorney for the child expressed that even a stricter "no alcohol" proviso which might be included in any new custody order "may not be a sufficient safeguard against [the father's] alcohol abuse placing [the child] at risk of harm or otherwise compromising [the child's] best interests." While the attorney for the child's concern was not determinative[*4], it was nevertheless a factor to be considered in deciding the child's best interests (see Matter of Brandon E. v Kim E., 167 AD3d 1293, 1295 [3d Dept 2018]), yet the court made no mention of it.
Having concluded that Family Court's determination lacks a sound and substantial basis in the record, we are empowered to make our own independent determination of the child's best interests, and our authority in that regard is as broad as that of Family Court (see Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1155 [3d Dept 2022], lv denied ___ NY3d ___ [Oct. 20, 2022]). In reviewing the record, we note that the mother testified without contradiction that she does not abuse alcohol or drugs, and while she previously struggled with her mental health, the hearing evidence showed that she has overcome that challenge and achieved a stable home life. By contrast, we find problematic the evidence of the father's regular drinking in the child's presence and his apparent lack of candor during the DWI assessment, as well as the dirty and unkempt condition of his apartment. We also find significant the strong position of the appellate attorney for the child in support of the mother's petition, particularly as expressed during oral argument. In light of the foregoing, we hold that the child's best interests are served by having the parents continue to share joint legal custody but awarding primary physical custody to the mother, with parenting time for the father as the parties shall mutually agree (see Matter of Jessica D. v Michael E., 182 AD3d 643, 646 [3d Dept 2020]; cf. Matter of Denise VV. v Ian VV., 205 AD3d 1090, 1092 [3d Dept 2022]; Matter of Jessica HH. v Sean HH., 196 AD3d at 755).
Garry, P.J., Lynch, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as dismissed petitioner's amended petition; such amended petition granted to the extent that joint legal custody between the parties is continued, petitioner is awarded primary physical custody of the child and respondent is awarded parenting time with the child as the parties shall mutually agree; and, as so modified, affirmed.

Footnotes

Footnote 1: The reason for the five-year delay between the arrest and the assessment is unclear.