Matter of Warda NN. v Muhammad OO. (2023 NY Slip Op 03054)

Matter of Warda NN. v Muhammad OO.

2023 NY Slip Op 03054

Decided on June 8, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 8, 2023

535056 535207 
[*1]In the Matter of Warda NN., Respondent,
v
Muhammad OO., Appellant. (And Another Related Proceeding.)

Calendar Date:May 4, 2023

Before:Garry, P.J., Egan Jr., Clark, Reynolds Fitzgerald and Ceresia, JJ.

Becker & Becker, Albany (Lawrence E. Becker of counsel), for appellant.
Tully Rinckey, PLLC, Albany (Leslie A. Silva of counsel), for respondent.
Sharon Lee McNulty, Albany, attorney for the children.

Ceresia, J.
Appeal from an order of the Family Court of Albany County (Richard Rivera, J.), entered February 7, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' children.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter and a son (born in 2012 and 2015, respectively). The father and the mother entered into an arranged marriage in their native country of Pakistan in 2009 and remarried in Brooklyn in 2011. The mother allegedly suffered domestic violence at the hands of the father throughout the marriage, often in the presence of the children. In December 2018, the mother took the children with her to Pakistan to care for her ill mother. Instead of returning afterward to the marital home in Brooklyn, she fled the marriage and moved to Albany with the children. In January 2020, the mother filed an initial custody petition seeking sole legal and physical custody of the children, as well as a family offense petition alleging that the father had committed several family offenses.
Following a trial relative to the petitions, Family Court awarded the mother sole legal and physical custody of the children, with parenting time to the father once a week over the telephone and once a month in a therapeutic supervised setting. The court also found that the father had committed the family offenses of assault in the third degree, disorderly conduct, stalking in the fourth degree, harassment in the second degree, aggravated harassment in the second degree and menacing in the third degree, and ordered the father to participate in a certified batterer's intervention program. After a dispositional hearing, the court issued a two-year stay-away order of protection against the father, permitting him to have contact with the children only as set forth in the custody order. The father appeals.
While not disputing Family Court's findings that he committed the family offenses, the father challenges the court's custody determination. "The dispositive inquiry in an initial custody determination is the best interests of the child[ren], which requires an evaluation of various factors, such as each parent's past performance, fitness and ability to maintain a stable home environment and provide for the child[ren]'s overall well-being, as well as the parents' respective willingness to foster a positive relationship between the child[ren] and the other parent" (Matter of Stephanie R. v Walter Q., 203 AD3d 1440, 1443 [3d Dept 2022] [internal quotation marks and citations omitted]). "In light of Family Court's superior position to evaluate the testimony and assess witness credibility, we defer to Family Court's credibility determinations and factual findings, and we will not disturb Family Court's custody determination if it is supported by a sound and substantial basis in the record" (Matter of Megan UU. v Phillip UU., 193 AD3d 1287[*2], 1289 [3d Dept 2021] [citations omitted]; see Matter of William Z. v Kimberly Z., 212 AD3d 1036, 1038 [3d Dept 2023]).
The mother testified at trial that she was under the total control and scrutiny of the father throughout their married life in Brooklyn and lived in a constant state of fear, with no access to money or her passport. She was not permitted by the father to have friends, to drive a car, to apply for citizenship or to learn to speak English. The father closely tracked the limited grocery purchases he allowed her to make and monitored her phone calls. The mother and the father lived in one room of the father's family's house, and it was the mother's responsibility to cook and do chores for the father and his family. Upon the birth of the parties' first child, the father and his family were unhappy that the child was female, and the father forced the mother on many occasions to have sexual intercourse against her will for the purpose of producing a son. This occurred in front of the daughter, who shared the family's single room, and who woke up and cried many times.
According to the mother, the father regularly physically abused her. In one instance, the father grew angry that the mother was behind in her food preparations for a family party, and he beat her in front of the family and burned her with a hot cooking utensil. The children, who witnessed this incident, cried and clung to the mother. She was not allowed to seek medical attention for the burn but instead was told to put toothpaste on it, and the burn left a scar. On another occasion, the father and the mother were at a shopping mall with the children when the father grew angry, slapped the mother, and then forced the family out to their car. Once they were all inside, he locked the doors and beat the mother in the children's presence, while the mother and children screamed and cried. There was another incident when the mother asked the father if she could obtain a driver's license, and the father proceeded to drag the mother by her hair in front of his family, saying, "this prostitute wants to drive the car." The father verbally abused the mother in front of the children, calling her stupid and useless and using slurs, and the son began repeating some of these abusive words.
The mother also testified that she was the sole caregiver for the children throughout the marriage. She would feed, bathe and dress the children, take them to their doctors' appointments, help them with schoolwork and soothe them when they were upset. The father did not treat the children with affection but only shouted at them, and became angrier when they cried. During the two-year period following the mother's move to Albany, the children had not seen the father at all and he had only recently spoken on the phone with them on a few occasions.
For his part, the father testified that the marriage was a happy one and the mother did not complain. The mother was not prevented from leaving the house[*3], and the two of them would bring the children out for trips and activities on the weekends. The father and the mother shared a joint bank account. The father was surprised when the mother did not return home from Pakistan but instead moved to a location unknown to him. The father offered no testimony concerning the mother's allegations of domestic abuse.
The attorney for the children advocated for the mother to have sole legal and physical custody, with some contact between the father and the children. In that regard, the attorney for the children posited that "it's clear that [the mother was] really the only parent who ha[d] expressed any interest in the well-being of the[ ] children."[FN1]
In view of the foregoing, and deferring to Family Court's credibility determinations, we find a sound and substantial basis in the record to support the court's holding that it was in the children's best interests to award sole legal and physical custody to the mother (see Matter of Brenna EE. v Andrew DD., 214 AD3d 1039, 1041 [3d Dept 2023]; Matter of Stephanie R. v Walter Q., 203 AD3d at 1443-1444; Vickie F. v Joseph G., 195 AD3d 1064, 1069 [3d Dept 2021]). The court credited the mother's testimony that she was the sole caregiver for the children throughout their lives, and pointed out that the father made no attempts to provide financial support, send gifts or inquire as to the children's health or schooling after they moved away. Moreover, "[w]hen determining the child[ren]'s best interests, Family Court must consider the effect of domestic violence when the allegations of domestic violence are proven by a preponderance of the evidence" (Matter of Paul CC. v Nicole DD., 151 AD3d 1235, 1236 [3d Dept 2017] [internal quotation marks, ellipses and citation omitted]; see Domestic Relations Law § 240 [1] [a]). As part of that analysis, the court noted that the father not only did not deny, but did not acknowledge or express remorse about the mother's allegations of domestic violence, nor did he articulate any concern for the effect that such an environment had on the children. The court found that the father exhibited behavior that demonstrated to the children that their mother should be disrespected and devalued.
Nevertheless, the father contends that Family Court erred in failing to determine the actual impact of any alleged domestic violence upon the children by means of a Lincoln hearing or a psychological evaluation. The father, however, did not request a Lincoln hearing or psychological evaluation in Family Court and this claim is therefore unpreserved for appellate review (see Matter of Imrie v Lyon, 158 AD3d 1018, 1021 [3d Dept 2018]; Matter of Thompson v Thompson, 267 AD2d 516, 519 [3d Dept 1999]). In any event, under the circumstances present herein, we find this argument to be without merit (see Matter of Thompson v Thompson, 267 AD2d at 519; see also Matter of William O. v Wanda A., 151 AD3d 1189, 1192 [3d Dept 2017], lv denied 30 NY3d 902 [2017]).[*4]
To the extent that the father asserts that he is entitled to more expansive visitation, "Family Court may order supervised parenting time if it determines that the parent is either unable or unwilling to discharge his or her parental responsibility properly and that, therefore, unsupervised parenting time would be detrimental to the child's safety" (Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1188 [3d Dept 2022] [internal quotation marks and citations omitted]). Given the unchallenged allegations of domestic violence as well as the ample evidence of the father's failure to provide care for the children when they resided together, we decline to disturb the limitations placed on the father's parenting time by Family Court.
Garry, P.J., Egan Jr., Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The attorney for the children continues to represent them on appeal and maintains her position.