Matter of Michael T. v Dana U. (2024 NY Slip Op 05849)

Matter of Michael T. v Dana U.

2024 NY Slip Op 05849

Decided on November 21, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 21, 2024

536138
[*1]In the Matter of Michael T., Appellant,
v
Dana U., Respondent. (Proceeding No. 1.)
In the Matter of Dana U., Respondent,
v
Michael T., Appellant. (Proceeding No. 2.) (And Two Other Related Proceedings.)

Calendar Date:October 7, 2024

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and McShan, JJ.

Cheryl L. Sovern, Malta, for appellant.
Alexandra J. Buckley, Albany, for respondent.
Karen R. Crandall, Schenectady, attorney for the child.

Pritzker, J.
Appeal from an order of the Family Court of Saratoga County (Paul Pelagalli, J.), entered September 1, 2022, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Michael T. (hereinafter the father) and Dana U. (hereinafter the mother) are the parents of the subject child (born in 2014). Pursuant to an October 2019 order entered upon the parties' consent, the parties shared joint legal custody of the child. Parenting time was essentially 50/50 each week. The order further provided that the parties must notify each other in advance of any scheduled doctor, dentist or school appointments so that each party may attend. In July 2020, the father filed a petition to modify the October 2019 order, seeking sole custody on the basis that the mother put the child on medication over his objection. Then, in December 2020, the mother filed a petition for enforcement of the October 2019 order. In January 2021, the mother filed her own petition for modification, seeking sole custody on the basis that the father was not participating in the child's doctors' appointments and refusing to give the child prescribed medication.[FN1] A fact-finding hearing commenced in August 2021 and continued in December 2021. Days after the December 2021 fact-finding, the mother filed another modification petition seeking placement of the child Monday through Friday with parenting time to the father on alternating weekends because the father's residence was not suitable for the child. At the mother's request, this petition was consolidated with the others and two more days of fact-finding ensued.
Ultimately, at the conclusion of fact-finding,[FN2] Family Court dismissed the father's modification petition and the mother's enforcement petition,[FN3] and granted the mother's modification petitions. Family Court found that the parties' inability to agree and the father's living arrangements constituted a change in circumstances. Family Court determined that it is in the best interests of the child for the parties to have joint legal custody with the mother having final decision-making authority if the parties cannot agree on matters related to the health, education and welfare of the child. Also, Family Court awarded the mother primary physical custody of the child with the father having parenting time on alternating weekends, as well as at least one weekday dinner. The order specifically directed that the father's parenting time was limited to the daytime "until such time as he obtains a stable, adequate, and appropriate residence."[FN4] The father appeals.
The father contends that the record does not support Family Court's conclusion that it was in the best interests of the child to grant the mother final decision-making authority over the child's health, education and welfare. To the extent the father is arguing that the mother failed to establish a change in circumstances, "[a] parent seeking to modify [*2]an existing custody order must first show that a change in circumstances has occurred since the entry of the existing custody order that then warrants an inquiry into what custodial arrangement is in the best interests of the child[ ]" (Matter of Timothy RR. v Peggy SS., 198 AD3d 1138, 1138 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Anthony JJ. v Angelin JJ., 211 AD3d 1394, 1395 [3d Dept 2022]). Here, it is undisputed that the parties disagreed whether to administer prescribed ADHD medication to the child while she was in school, thus, Family Court's determination that "the parties cannot agree on decisions regarding the child's medication and school related issues" is supported by a sound and substantial basis in the record and established the necessary change in circumstances (see Matter of Annette R. v Dakiem E.D., 223 AD3d 504, 504 [1st Dept 2024]; see also Matter of Soper v Soper, 203 AD3d 1162, 1162 [2d Dept 2022]). As such, the court focused primarily on whether it was in the best interests of the child to maintain joint legal custody with final decision-making authority to one parent, or whether it was necessary to grant one parent sole legal custody.
"In making a best interests determination, Family Court must consider such factors as the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Brittni P. v Michael P., 210 AD3d 1338, 1339 [3d Dept 2022] [internal quotation marks, brackets and citations omitted], lv denied 39 NY3d 908 [2023]; see Matter of Aden HH. v Charish GG., 226 AD3d 1109, 1110-1111 [3d Dept 2024]). "It is well settled that because Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record" (Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1233 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of David V. v Roseline W., 217 AD3d 1112, 1113 [3d Dept 2023], lv denied 40 NY3d 905 [2023]).
Testimony at the fact-finding hearing established that the child has been diagnosed with ADHD. The child's pediatrician testified that after behavioral modifications did not help, the pediatrician prescribed Adderall. The father was not present at this appointment. The pediatrician testified that the medication could help the child focus, pay better attention and experience less hyperactivity. A few months after prescribing this medication, the child had an appointment with the pediatrician and was accompanied by the father. The father was upset and, without the child present, relayed to the pediatrician [*3]his distrust in doctors and medications. In response, the pediatrician explained to him the safety of the prescribed medication. The pediatrician also testified that, during follow-up visits, the child was in good health and was not experiencing side effects, other than a reported bad taste in her mouth. Testimony also established that the parties did not agree whether to administer the medication to the child, which resulted in the child only being medicated for school on Thursdays and Fridays, when the mother had parenting time.[FN5] The pediatrician testified that there were no medical concerns with the child being medicated on some days and not others. However, testimony from the child's first and second grade teachers demonstrated that it was negatively affecting the child in other ways. Specifically, both teachers testified that there was a noticeable difference in the child's behavior and focus on days she was with the father and did not receive the medication. Testimony also demonstrated that, while these issues did not hold the child back from advancing in grade levels, as the child progresses through school the workload will become increasingly more demanding and difficult.
The mother testified that she and the father do not share the same views regarding the child's prescribed ADHD medication. The mother believes that the pediatrician has the child's best interests in mind and that because medication was prescribed, it is beneficial for the child. The mother testified that there was a period of time in 2020 during which she was not administering the medication, but then she was informed by the child's teacher that the child was having behavioral problems, therefore, the mother began giving the child medication again. The mother also testified that the parents disagree as to whether the child should be vaccinated for COVID-19; the mother would like the child to receive the vaccine and the father would not. Further, the mother testified that she and the father have disagreements about parenting styles and discipline and have difficulty communicating. The parties generally communicate via text message because when the parties speak in person or on the phone, the mother testified that the father gets very emotional and resorts to name calling, which makes it difficult to communicate. As to the residence where the father was exercising his parenting time, the mother testified that the father moved out of his apartment and into his grandmother's residence. The mother explained that it was her understanding that the grandmother's home is a two-bedroom trailer in which five adults and six children plus the child reside. The mother testified that due to these living arrangements, when the child returns to her after being with the father, the child has difficulty focusing on homework and difficulty sleeping at night. Significantly, Family Court found the mother, the pediatrician, the child's two teachers and a school psychologist from the child's school [*4]to be credible witnesses.
The father testified that, during the relevant time period, he did not experience any difficulties with the child's focus and attention. The father stated that he is aware of the child's ADHD diagnosis but believes the ADHD medications damage the liver and kill brain cells. According to the father, he was on medication between the ages of 5 and 18 and, during that time, he experienced hallucinations. The father testified that based on his own personal feelings, not medical texts or discussions with doctors, he does not accept the pediatrician's testimony that medications today are scientifically different than medications prescribed when the father was a child. Additionally, the father stated that he is not in favor of the child receiving the COVID-19 vaccine. The father also testified that the teachers may have been lying in their testimony about the child's behavior being better when the child took medication as he has not observed behavioral issues when the child is not taking the medication. However, the father acknowledged that he was aware of two occasions in which the child acted out at school when she was not on medication. On one such occasion, the entire class had to be removed from the classroom because the child was a danger to the other students. On another occasion, the child stabbed another student with a pencil. According to the father, he and the mother are not usually able to reach an agreement regarding decisions about the child's school, holidays and other things. As to his living conditions, the father testified that, during his parenting time, he and the child were staying at his mother and grandmother's three-bedroom trailer and that the child slept on her own cot in a shared room with his mother. The father explained that in addition to his mother and grandmother living in the trailer, his sister and her three young children also lived there. Family Court found that the father "was not a credible witness. His opinions regarding [the pediatrician] and the child's teachers are without a basis and border on paranoia and delusion."
Based on the foregoing, there is a sound and substantial basis in the record for Family Court's determination that it is in the best interests of the child for the mother to have final decision-making authority over medical, education and welfare issues when the parties do not agree (see Matter of Joshua PP. v Danielle PP., 205 AD3d 1153, 1157-1158 [3d Dept 2022], lv denied 39 NY3d 901 [2022]). Awarding the mother final decision-making authority is not granting her more than requested. To that end, in her petition she requested sole legal custody. Moreover, the testimony established that the issues of medical, education and welfare relate to one another; specifically, there was testimony that when the child is on medication, the child performs better in school and has better relationships with her peers. Finally, awarding the mother primary physical custody and reducing the [*5]father's parenting time to alternating weekends will provide the child with consistency during the school week with her residence and her medication, hopefully alleviating some of the challenges the testimony revealed were occurring at the time of the petition.[FN6] Thus, in deferring to Family Court's credibility determinations, there is a sound and substantial basis in the record to support the custody and parenting time determinations (see Matter of Jason VV. v Brittany XX., 230 AD3d 1398, 1401-1402 [3d Dept 2024]; Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089 [3d Dept 2023]; Matter of Joshua PP. v Danielle PP., 205 AD3d at 1160).
Egan Jr., J.P., Aarons, Lynch and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Although not contained in the record on appeal, the mother filed a modification petition in April 2021, which was ultimately withdrawn before fact-finding.

Footnote 2: The parties and Family Court agreed not to conduct a Lincoln hearing.

Footnote 3: We note that the mother withdrew her enforcement petition prior to fact-finding.

Footnote 4: The order provided specific parenting time schedules for both situations.

Footnote 5: Testimony also established that the mother did not administer the medication during times the child was not in school, such as summer break.

Footnote 6: The father's further assertion, that Family Court erred in eliminating his overnights with the child, is moot given that the attorney for the child has advised this Court that the father is exercising the overnight parenting time schedule provided in the order on appeal (see generally Matter of William O. v Wanda A., 151 AD3d 1189, 1190-1191 [3d Dept 2017], lv denied 30 NY3d 902 [2017]).