Matter of Douglas CC. v Musique DD. (2025 NY Slip Op 06575)

Matter of Douglas CC. v Musique DD.

2025 NY Slip Op 06575

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-24-1659
[*1]In the Matter of Douglas CC., Respondent,
v
Musique DD., Appellant. (And Another Related Proceeding.)

Calendar Date:October 16, 2025

Before:Aarons, J.P., Reynolds Fitzgerald, Ceresia, Fisher and McShan, JJ.

Natanya E. DeWeese, Ithaca, for appellant.
Karen A. Leahy, Cortland, for respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Chemung County (Mary Tarantelli, J.), entered April 23, 2024, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.
Respondent (hereinafter the mother) and petitioner (hereinafter the father) are the unmarried parents of the subject child (born in 2018). In August 2023, the mother filed a family offense petition against the father in Tompkins County, alleging that he had committed the family offenses of disorderly conduct, aggravated harassment in the second degree, coercion in the second degree and stalking. The father simultaneously filed a petition for custody in Chemung County, seeking joint legal and primary physical custody. The family offense proceeding was transferred to Chemung County, and Family Court temporarily ordered joint legal and shared physical custody to the parents.
A fact-finding hearing took place, at the outset of which the parties both requested joint legal custody with each seeking primary physical placement and retention of final decision-making authority.[FN1] At the conclusion of that hearing, and after conducting a Lincoln hearing, Family Court dismissed the mother's family offense petition and granted the parents joint legal custody of the child with the father having final decision-making authority if he was unable to reach the mother, if the mother did not respond or if the parties did not agree. The court further ordered the father's residence to be the "primary [residence] for school purposes" and the mother to have specified parenting time.[FN2] The mother has advised the Court that, during the pendency of this appeal, Family Court issued a new order in June 2025 upon the parties' consent. As relevant here, the new order provides the same custodial arrangement that was in place in the order appealed from but alters the parties' parenting time arrangement in light of the mother's recent relocation to Delaware. The mother appeals.
We affirm. The focus of any custodial arrangement is the best interests of the child, warranting consideration of "such factors as the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Michael T. v Dana U., 232 AD3d 1058, 1060 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Britney A. v Jonathan A., 238 AD3d 1447, 1448 [3d Dept 2025]). Here, Family Court determined that the father was mostly credible, and the mother was somewhat credible, but less credible than the father and the other more credible witnesses. With that in mind, we note that "[t]his Court accords great deference to Family Court's factual findings and [*2]credibility determinations and will not disturb its custodial determination if supported by a sound and substantial basis in the record" (Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1076 [3d Dept 2024] [internal quotation marks, ellipsis and citations omitted]; accord Matter of Amber EE. v Kalam EE., 241 AD3d 1623, 1625 [3d Dept 2025]; see Matter of Britney A. v Jonathan A., 238 AD3d at 1448-1449). "Further, where, as here, an initial custody determination involves one parent who wishes to relocate with the child, the parent's decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child" (Matter of Britney A. v Jonathan A., 238 AD3d at 1448 [internal quotation marks and citations omitted]; see Matter of Leslie QQ. v Daniel RR., 232 AD3d 1086, 1088 [3d Dept 2024]).
In accord with Family Court, we find that the record establishes that both the mother and the father are loving parents who care for and maintain close relationships with the child. The testimony at the hearing reflects that the parents resided together from the time of the child's birth, and equally contributed to raising the child, until the mother moved out of their shared residence in the City of Elmira, Chemung County in September 2020. To that end, both appear adequately suited to provide for the child's emotional and financial well-being. What is also evident from the record, however, is that the home environment provided by the father offers the child more stability, as she has grown up in that location for most of her life and has thrived in her current living arrangement. Meanwhile, the mother had relocated on various occasions since moving out, including a stint in Atlanta, Georgia. According to the father, the mother would go long stretches of time without seeing the child but, for the most part, maintained contact with the child through phone and video calls. The father testified that he was currently living with a girlfriend and the girlfriend's child, both of whom maintain a positive relationship with the child. The mother testified that she was currently residing near the City of Ithaca, Tompkins County with her boyfriend and that she desired to relocate the child and change her school enrollment. According to the mother, she had some general awareness that her boyfriend had a history with Child Protective Services but was not aware that he had indicated reports in 2000, 2008 and 2016. In totality, we find that Family Court's custodial determination, including the practical effect of the decision-making provision, properly accounts for the facts borne out by the record and the corresponding physical custody arrangement. Accordingly, we discern no reason to disturb Family Court's custodial determination, as it is supported by a sound and substantial [*3]basis (see Matter of Michael YY. v Teresa ZZ., ___ AD3d ___, ___, 2025 NY Slip Op 05732, *1 [3d Dept 2025]; Matter of Andrew I. v Lizbeth H., 230 AD3d 1414, 1416 [3d Dept 2024]).[FN3] The mother's argument concerning her allegations of domestic violence is without merit. "[Family C]ourt must consider the effect of domestic violence when the allegations of domestic violence are proven by a preponderance of the evidence" (Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024] [internal quotation marks and citations omitted]). Here, the resolution of that issue amounted to a credibility determination. As Family Court did not credit the mother's testimony to that effect, the evidence was insufficient to meet her burden (see Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1379 [3d Dept 2019]; compare Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]). Further, although we agree with the mother's argument that Family Court considered an uncorroborated hearsay statement, "we find the error to be harmless given that the court placed minimal, if any, reliance on those hearsay statements, and the evidence is otherwise sufficient to support the court's determination" (Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1073 [3d Dept 2024] [internal quotation marks and citation omitted]; see Matter of Watling v Watling, 236 AD3d 1047, 1048 [2d Dept 2025], lv denied 44 NY3d 902 [2025]).
Aarons, J.P., Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: At the hearing, the attorney for the child did not take a position with respect to custody. The attorney for the child on appeal is aligned with the father's position.
Footnote 2: The mother has advised the Court that, during the pendency of this appeal, Family Court issued a new order in June 2025 upon the parties' consent. As relevant here, the new order provides the same custodial arrangement that was in place in the order appealed from but alters the parties' parenting time arrangement in light of the mother's recent relocation to Delaware.
Footnote 3: The mother's argument concerning her allegations of domestic violence is without merit. "[Family C]ourt must consider the effect of domestic violence when the allegations of domestic violence are proven by a preponderance of the evidence" (Matter of Robert C. v Katlyn D., 230 AD3d 1392, 1394 [3d Dept 2024] [internal quotation marks and citations omitted]). Here, the resolution of that issue amounted to a credibility determination. As Family Court did not credit the mother's testimony to that effect, the evidence was insufficient to meet her burden (see Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1379 [3d Dept 2019]; compare Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]). Further, although we agree with the mother's argument that Family Court considered an uncorroborated hearsay statement, "we find the error to be harmless given that the court placed minimal, if any, reliance on those hearsay statements, and the evidence is otherwise sufficient to support the court's determination" (Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1073 [3d Dept 2024] [internal quotation marks and citation omitted]; see Matter of Watling v Watling, 236 AD3d 1047, 1048 [2d Dept 2025], lv denied 44 NY3d 902 [2025]).